UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD DOWLING *et al.*,

        Plaintiffs,                        Case No. 1:11-cv-556

v.                                       HON. JANET T. NEFF

CITY OF THREE RIVERS *et al.*,

        Defendants.
_____/

**OPINION**

Plaintiffs Richard Dowling, Pam Dowling, Howard Hayes, and Bogeys Shell, Inc., filed this action against Defendants City of Three Rivers, police chief Thomas Bringman, police officer Matt Kilbourn ("City Defendants"), and Cheryl Cook, alleging claims stemming from an altercation between Cook and the individual Plaintiffs at Bogeys, initiated by Cook's verbal attack on the Dowlings on February 24, 2010 over the termination of Rhonda Bringman's employment at Bogeys. When Kilbourn arrived to investigate, Plaintiffs, and Richard Dowling in particular, sought charges against Cook. Kilbourn's investigation resulted in arrest warrants also being issued against Plaintiffs for disorderly conduct/disturbing the peace.

Plaintiffs filed this action alleging: (1) claims under 42 U.S.C. § 1983 against Kilbourn and Bringman based on unlawful arrest and malicious prosecution in violation of the Fourth Amendment and retaliatory arrest in violation of the First Amendment; intentional torts against Kilbourn and Bringman, including false arrest and malicious prosecution under federal and state law; (2) a municipal liability claim against the City of Three Rivers under 42 U.S.C. § 1983 (lack of training);

and (3) claims of assault and battery, intentional infliction of emotional distress, tortious interference with business relationship or expectancy, defamation, and malicious prosecution against Cook.

The City Defendants and Cook have filed separate motions for summary judgment. In their response brief, Plaintiffs state that they are no longer pursuing their claims against Defendant City of Three Rivers or Defendant Bringman.[1] The only remaining claims for consideration are those alleged against Defendant Kilbourn and Defendant Cook. Further, Plaintiffs indicate they are not pursuing their malicious prosecution claim under 42 U.S.C. § 1983.

Having fully considered the parties' briefs and accompanying exhibits, the Court concludes that oral argument is unnecessary to resolve the pending motions. *See* W.D. Mich. LCivR 7.2(d). Because genuine issues of material fact exist with respect to the claims against Cook, her motion for summary judgment is properly denied. However, Kilbourn is entitled to summary judgment because he had probable cause to effect the arrests at issue, and he otherwise is entitled to qualified immunity.

## I.  Facts[2]

Plaintiffs Richard and Pam Dowling, husband and wife, formerly operated Bogeys' Shell, a gas station/convenience store in Three Rivers, Michigan, where Plaintiff Hayes was an employee (Compl. ¶¶ 1,4; KSMF ¶ 1). The Dowlings/Bogeys had an unharmonious relationship with the City/local law enforcement stemming from the City's alleged unwillingness to prosecute persons

---

[1] Plaintiffs have since filed a Notice of Voluntary Dismissal of their claims against Defendant City of Three Rivers and Defendant Bringman (Dkt 67).

[2] Where noted, the facts are drawn from the parties' Statements of Material Facts (SMF), cited as "KSMF" (Kilbourn's (City Defendants') and Plaintiffs' corresponding SMF) and "CSMF" (Cook's and Plaintiffs' corresponding SMF). The facts are set forth for purposes of the resolving the instant motions and are not intended as a resolution of any disputed facts.

who have stolen from Bogeys, including gas station "drive-offs" (Compl. ¶¶ 15-18).  The City's agents told Plaintiffs the perpetrators would, at most, be asked to pay back the money, and so Plaintiffs should simply make citizens pre-pay for gas (Compl. ¶¶ 17-18).

On February 24, 2010, Cook entered Bogeys and began to scream, curse, and cause a scene about the Dowlings' firing of her friend, Rhonda Bringman, the sister of Defendant Bringman, whom the Dowlings had hired and fired within the previous week (Compl. ¶¶ 22-24; KSMF ¶¶ 3-4, 6).  Cook called Richard a "piece of shit," an "asshole," a "cocksucker," and an individual who abuses his employees, in front of numerous employees and customers (Compl. ¶ 25).  Plaintiffs surrounded Cook and escorted her off the premises to her vehicle, which was parked at the bank next door (Compl. ¶ 29; KSMF ¶¶ 7, 10, 11).  As Cook was leaving in her vehicle, she struck Hayes' right knee, injuring him (Compl. ¶¶ 30-31).

Plaintiffs reported Cook to the Three Rivers police and requested her prosecution (Compl. ¶¶ 28, 32).  Defendant Kilbourn investigated Plaintiffs' complaint (Compl. ¶ 33; KSMF ¶¶ 13-20). Kilbourn told Plaintiffs that if they continued to pursue prosecution of Cook, he would have everyone involved arrested and prosecuted for disorderly conduct (Compl. ¶ 34).  Plaintiffs pursued Cook's prosecution, and the police defendants pursued arrest warrants against Plaintiffs, who were arrested at the Three Rivers Police Department and had to post bail (Compl. ¶¶ 35-36).  The charges against Plaintiffs were eventually dropped (Compl. ¶¶ 42-44; *see* KSMF ¶¶ 29-30).

## II.  Legal Standard

A moving party is entitled to a grant of its motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

247-48 (1986). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008); *Hamilton v. Starcom Mediavest Group, Inc.,* 522 F.3d 623, 627 (6th Cir. 2008). The initial burden is on the moving party to show that there is no dispute regarding any genuine issue of material fact. *Slusher,* 540 F.3d at 453. "Once the moving party supports its motion for summary judgment, the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Id.* "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.,* 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson,* 477 U.S. at 251-52).

### III. Discussion

#### A. Claims against Defendant Kilbourn

Plaintiffs allege federal claims against Kilbourn for unlawful arrest in violation of the Fourth Amendment, and retaliatory arrest and prosecution in violation of the First Amendment. Plaintiffs allege state law claims against Kilbourn for false arrest and malicious prosecution under MICH. COMP. LAWS § 600.2907. Under the applicable legal standards, Plaintiffs' claims cannot survive summary judgment.

##### 1. *Fourth Amendment Claims*

Plaintiffs' constitutional claims are asserted under § 1983:

> "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the

4

color of state law." *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006).

*Leonard v. Robinson,* 477 F. 3d 347, 356 n.1 (6th Cir. 2007).

In Count II of their Complaint, Plaintiffs allege that Kilbourn deprived them of their rights under the Fourth Amendment because he lacked probable cause to seek their arrest, and improperly influenced the prosecutor to bring charges against Plaintiffs. Defendants argue that Kilbourn is entitled to summary judgment of the Fourth Amendment claims because Kilbourn made a full disclosure of all facts of his investigation to the prosecutor and probable cause existed to charge Plaintiffs with disorderly conduct. The Court agrees that Plaintiffs have failed to show any alleged violations under the Fourth Amendment.

Under the circumstances presented, Kilbourn had probable cause to seek charges against Plaintiffs for violating the city ordinance. "For probable cause to arrest to exist, the 'facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.'" *Thacker v. City of Columbus,* 328 F. 3d 244, 255 (6th Cir. 2003) (citations omitted). "'Probable cause requires only the probability of criminal activity not some type of 'prima facie' showing.'" *Crockett v. Cumberland College,* 316 F.3d 571, 580 (6th Cir. 2003) (citation omitted). "The probability of criminal activity is assessed under a reasonableness standard based on 'an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.*'" *Id.* (quoting *Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir. 1999)).

Here, Plaintiffs were charged with disorderly conduct under the City of Three Rivers Ordinances, 4-2.1 (Defs. Ex. J), which prohibits, *inter alia*, accosting or annoying any person in a

public place; anyone from engaging in any disturbance, fight or quarrel in a public place; and disturbing the public peace and quiet by loud or boisterous conduct. As Defendants contend, the ATM video and Kilbourn's interview with Heidi Carpenter, who witnessed the altercation while at the bank ATM, establishes probable cause to arrest Plaintiffs under 4-2.1. The ATM video shows that Plaintiffs pursued Cook from the Bogeys Shell property onto the bank property, contrary to their allegation in their Complaint that they did nothing more than defend their property against a trespass or other criminal interference from Cook pursuant to their legal right (Compl. ¶ 41).

Further, any claim that Kilbourn is liable for improperly influencing the City Attorney to bring charges against Plaintiffs based on malice despite a lack of probable cause fails for lack of evidence. "An action under § 1983 does lie against an officer who obtains an invalid search warrant by making, in his affidavit, material false statements either knowingly or in reckless disregard for the truth." *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir 1989) (citations omitted). However, Kilbourn sought charges based on his investigation, and Plaintiffs have not alleged, nor does the record establish, that he withheld evidence or was untruthful in seeking the warrants (*see* Kilbourn's affidavit, Defs. Ex. I).

Even if Plaintiffs have shown Kilbourn violated their Fourth Amendment rights in seeking charges against them, he is entitled to summary judgment of this claim on the basis of qualified immunity. "Qualified immunity shields government officials from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Chappell v. City of Cleveland,* 585 F.3d 901, 907 (6th Cir. 2009). A plaintiff has the burden of showing that the defendant is not entitled to qualified immunity. *Id.* The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful

6

in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009). That is, "[q]ualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell,* 585 F.3d at 907.

In the context of a probable-cause determination, an officer is immune from suit unless it was apparent that "the circumstances with which [the arresting officer] was confronted did not constitute probable cause … ." *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987). Here, based on the ATM video and interview with Carpenter and other witnesses, there is no genuine issue of disputed fact regarding qualified immunity. A reasonable officer in Kilbourn's position could have believed that it was lawful to submit a charging request to the prosecutor under the circumstances presented. "Qualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Chappell,* 585 F.3d at 907 (citations and internal quotations omitted). "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present," and "in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson,* 483 U.S. at 641. Under these standards, given the circumstances discussed above, Kilbourn is entitled to qualified immunity with respect to Plaintiffs' Fourth Amendment claims.

2. *First Amendment Retaliation Claims*

"'[R]etaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment.'" *Holzemer v. City of Memphis,* 621 F.3d 512, 523-24 (6th Cir. 2010) (citations omitted). "[A] plaintiff alleging First Amendment retaliation must prove that 1) he

engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct." *Id.* at 520 (citation omitted).

First Amendment law is context driven and "the underlying concepts that [the elements] signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context." *Thaddeus–X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc). If the plaintiff establishes the three elements, the burden of production then shifts to the defendants to show that their actions would not have been different absent the plaintiff's protected conduct. *Id.* at 399.

Plaintiffs contend that the evidence in this case is overwhelming that "Kilbourn requested disturbing the peace charges against all of the plaintiffs because of their petitioning or protesting activities – their requests that he pursue an arrest and prosecution of Ms. Cook" (Pls. Br., Dkt 55 at 18).

The Court disagrees. Probable cause existed for the arrests based on Kilbourn's investigation of the circumstances. Plaintiffs were subject to arrest irrespective of any speech or lack of speech on their part. There is no evidence beyond Plaintiffs' bare assertion that the charges were retaliatory, i.e., that their arrest was motivated at least in part by their protected conduct. *See Thaddeus–X,* 175 F.3d at 399.

Moreover, as Defendants argue, Kilbourn is entitled to qualified immunity on this claim. Even if it was clearly established law that a police officer could not arrest a citizen in retaliation for the citizen's insults to or criticism of the officer, it would not be clear to a reasonable officer that Kilbourn's conduct was unlawful in the situation he confronted. *See Saucier,* 533 U.S. at 202; *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 219 (6th Cir. 2011).

Plaintiffs' § 1983 claims fail because they cannot show a violation under either the Fourth or First Amendment, and Kilbourn is otherwise is entitled to qualified immunity.

### 3. *State Law Claims*

Plaintiffs assert state law claims of false arrest and malicious prosecution, actionable under MICH. COMP. LAWS § 600.2907 (Compl. ¶¶ 69-70). Having fully considered the record, and the applicable legal standards, the Court concludes that Kilbourn is entitled to governmental immunity with respect to these claims. To avoid the cloak of governmental immunity, Plaintiffs must establish that Kilbourn did not act in good faith or acted with malice in pursuing charges against Plaintiffs. *See Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011) (setting forth the test for governmental immunity to intentional torts under *Ross v.Consumers Power Co.,* 363 N.W.2d 641, 647 (Mich. 1984)); *Odom v. Wayne Cnty.,* 760 N.W.2d 217, 228 (Mich. 2008).

Unlike qualified immunity under federal law, which uses an objective standard, "[t]he good-faith element of the *Ross* test is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Odom,* 760 N.W.2d at 229. Accordingly, "the proponent of individual immunity must establish that he acted without malice." *Id.* at 225; *see also Miller v. Sanilac Cnty.,* 606 F.3d 240, 254 (6th Cir. 2010) (applying Michigan law) ("The only factor at issue here is 'good faith,' which is defined as 'without malice.'").

As Defendants argue, there is no record evidence to support Plaintiffs' claim of malice on the part of Kilbourn. Kilbourn's testimony establishes that he acted in good faith. Plaintiffs offer no support for their contentions of lack of good faith other than their unsupported conclusions. Defendant Kilbourn is entitled to summary judgment of Plaintiffs' state law claims.

9

B.  Claims against Defendant Cook

Plaintiffs allege claims against Cook for assault and battery, intentional infliction of emotional distress, and tortious interference with a business relationship or expectancy.[3]  On the record before the Court, genuine issues of material fact exist with respect to these claims.  Summary judgment therefore is improper.

Despite Cook's characterization of the incident on February 24, 2010 as "mutual" (CSMF ¶ 1), there can be no dispute that the altercation between the parties was initiated when Cook drove to Bogeys, entered the gas station/convenience store, and began her alleged verbal tirade concerning the Dowlings' firing of Cook's friend Rhonda Bringman.  The altercation progressed to a mutual exchange of words between the individual Plaintiffs and Cook, as she was "escorted" out of Bogeys and returned to her car in the bank parking lot, as shown on the ATM video.

Cook generally seeks dismissal of Plaintiffs' claims on the grounds that the Dowlings have failed to articulate or quantify any damages vis-à-vis Cook, particularly with regard to the tortious interference with a business relationship or expectancy claim.  Cook also argues that Plaintiffs have failed to show "extreme and outrageous conduct" on the part of Cook, or severe emotional distress, to sustain their claim of intentional infliction of emotional distress.  *See Thornton v. Fray,* 429 F. App'x 504, 512 (6th Cir. 2011); *Atkinson v. Farley,* 431 N.W.2d 95, 97 (Mich. Ct. App. 1988).  Cook essentially relies on an evaluation of the incident based on Plaintiffs' depositions, to argue that the incident was overblown, and nothing about the incident could be characterized as "extreme and outrageous" or could be determined to have resulted in "severe emotional distress" to the Dowlings.

---

[3]Plaintiffs' Complaint also alleges claims of defamation and malicious prosecution against Cook (Compl. ¶ 47); however, Plaintiffs' Response does not acknowledge or provide any argument with regard to these claims ( Pls. Br. at 1, 22-24).  The Court therefore deems these claims abandoned, and they will be dismissed.

However, on the record before the Court, these determinations require the resolution of disputed facts, precluding summary judgment.

Cook seeks summary judgment of the assault and battery claim on the grounds that she denies striking Hayes with her car, and that even assuming it happened, Hayes' medical records confirm that he did not sustain any injury. However, Cook acknowledges, and the Court fully agrees, that Plaintiffs' allegations create a question of fact inappropriate for resolution by the Court on a motion for summary judgment (CSMF ¶ 11). This is particularly so given the medical records confirming Hayes' medical treatment (Pls. Ex. 1; Cook's Ex. E), and his deposition statements.

The record and the legal arguments are not well-developed with respect to the claims against Cook. The parties dispute the nature and extent of the altercation between Plaintiffs and Cook, and the various parties' level of involvement. Although Cook argues that Plaintiffs suffered no economic loss, e.g., lost business receipts, Plaintiffs contend that their claims are not limited to such losses. Given these key factual disputes and the lack of clear evidence or argument concerning damages, Cook is not entitled to summary judgment of the three remaining claims against her.

## IV. Conclusion

Defendant Kilbourn's motion for summary judgment is granted. Plaintiffs' claims of defamation and malicious prosecution against Defendant Cook are deemed abandoned and will therefore be dismissed. Defendant Cook's motion for partial summary judgment is otherwise denied.

An Order consistent with this Opinion will be entered.

DATED: November 20, 2012          /s/ Janet T. Neff
                                  JANET T. NEFF
                                  United States District Judge